IN THE UNITED STATES DISTRICT COURT OF MARYLAND
FOR BALTIMORE CITY

| | | |
|---|---|---|
| TROY ERIC BARNES | * | |
|     Plaintiff | * | |
| v. | * | Civil Case No: 1:16-CV-00502- |
| STATE OF MARYLAND | * | |
|     Defendant | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STAY RESPONSE TO DEFENDANT MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND MOTION FOR DISCOVERY PURSUANT TO RULE 56(D)**

The Defendants have filed a Motion to Dismiss or/in the Alternative for Summary Judgment. There has been absolutely no discovery to date. Defendants has exclusive control of its work records and over its agents, discovery is Plaintiff's only means to obtain this key, material evidence for Plaintiff to establish the prima facie case elements at issue . As a result, Plaintiff respectfully asks the Court to dismiss Defendants summary judgment motion and to allow Plaintiff to proceed with discovery

## I.    STATEMENT OF FACTS

In October 2011, Troy Barnes was transferred to Western Correctional Institution (WCI) to complete a 20 year sentence. On November 26, 2011, Plaintiff's half-brother, via father Corey Barnes Sr., named Dallas Evans, an inmate at WCI and a known Crip gang member, was involved in a violent altercation with several members of the Blood Gang. Thereafter, Mr. Evans was transferred to North Branch Correctional Institution ("NBCI"), 14100 McMullen Highway, S.W. Cumberland, Maryland. Some of the rival gang, the Bloods. Mr. Evans was taken to NBCI correctional facility after the incident and the blood members who involved were placed on

1

disciplinary cell restriction. The Blood members who were involved in the 11/26/2011 incident were returned to the general population of the prison. On June 6, 2012, while in line for commissary, Troy Barnes witnessed/heard blood members, named "Homicide" and another named "Trouble," discussing their intentions to kill Barnes because of his relation to the rival gang leader Dallas Evans. After hearing this, Barnes left the commissary room and headed toward the nearest watch booth. While on his way, Sgt J. Femi approached Barnes and asked where he was going. Barnes explained that he did not want to return to his own cell because of what he heard the gang members discussing. Femi insisted that Barnes return to his cell, but Barnes refused. Femi placed hand restraints on Barnes and escorted him to Unit #4, where he was given a ticket and put on disciplinary segregation for 45 days. On July 2, 2012, Troy Barnes and his mother both send letters to the warden expressing concerns of Barnes's safety. Barnes's requested to be placed in protective custody but was denied.

On July 20, 2012, Troy Barnes was informed that his segregation time was over, and he was going to be sent back to the general population. Barnes asked what housing unit he was going to and was told HU 3, the "gang" housing unit which is the building he fled from. Barnes was again forced to refuse housing to ensure his safety. On August 2012, Barnes met with case managers, Steve Helmick and Dave Bittinger, as well as Lt. Gordon (or Lt. Liken) about his safety concerns if he returned to HU 3. It was reconciled and Barnes was sent to HU 2 upon completed segregation sentence on September 3, 2012. On February 17, 2015, Inmate Phillip Jackson was transferred from Hagerstown Correctional Institution for assault on staff. Upon arrival, Jackson threatened to fight every cell mate unless he was put in a cell with his old cellmate from Hagerstown.

On February 20, 2015, Phillip Jackson attacked Plaintiff for the first time. The attack leaves Barnes with a split top lip. On February 21, 2015, Defendant Jackson informs Plaintiff that he is a Blood Gang member and informed the Plaintiff that he discussed his gang involvement with Lt. Gordon. On February 24, 2015, Plaintiff attempted to save himself by informing Defendant COR. Beal during lunch time that he needed help for an anxiety attack and thoughts of harming himself. Later Plaintiff is taken to holding cell "door 419" where he is slammed to the ground while in handcuffs and struck in face with knee of Officer B. Wilburn and repeatedly sprayed with pepper spray while being interrogated, hackled, made fun of, called stupid. After Officers N. Metz and Officer B. Wilburn left 5 minutes later Sgt Slate entered saying "hey stupid" and sprayed Plaintiff once more with pepper spray. 10 minutes later Plaintiff was examined by a nurse and pictures are taken of him and he's sent to a scalding hot shower to wash off the spray. 20 minutes later Plaintiff is taken to SOH medical observational housing where he was evaluated by psychology associate Shane Weber, whom Plaintiff asked if it would be possible to finish his remaining 22 days of segregation time in SOH because he was afraid to return to his cell, cell 35 A-Tier HU 4. After 24 hours in SOH Plaintiff was discharged.

On February 25, 2015, Plaintiff is returned to HU 4, put in holding cell of the property room where property Officer S. Wilson was getting property. Plaintiff asked him if he knew what cell they were putting him in. Mr. Wilson said Cell 35. Plaintiff asked if inmate Philip Jackson was still in there, and the Officer replied "yes". Plaintiff told Officer Wilson that he couldn't go back in there with him and he replied "what's he doing to you" Plaintiff replied that Defendant Jackson promised to hurt him if he returned. Dismissively the officer said well if you refuse you'll go in B-1 (cell) "the butt naked cell." Plaintiff said okay he will go there. Plaintiff was taken to cell B-1 and remained there until March 1, 2015 with no mattress or blanket and

forced to sleep on the concrete which was riddled with mice feces. Plaintiff was only fed breakfast 3 times, not served lunch, and fed dinner only twice. The butt naked cell is a cold dark cell where the prisoner is resigned to sleeping on a bug infested floor with no mattress or covers and must do so with no cloths.  Further, meals are irregular, and not activity is allowed.

On March 1, 2015, Officer B. Wilburn came to cell B-1 and informed Plaintiff was going back to normal housing. As they got to a tier Plaintiff asked what cell he was being placed in and Officer Wilburn replied Cell 35. Plaintiff said he couldn't go back in there because he will be in danger. Officer Wilburn replied, "well, you're going." Mr Barnes said he refused and asked to be taken back to B-1. Officer Wilburn said that he didn't have that option anymore. Thereafter, Plaintiff asked to see a lieutenant. Officer Wilburn refused the request. Plaintiff was forcibly taken to Cell 35. Plaintiff said that there were going to be problems and said "please I can't go in." Standing nearby were officers including Sgt Slate and S. Wilson. Out of fear of being abused and sprayed by staff again Plaintiff entered Cell 35.

On March 2, 2015, Plaintiff filled out a request for administrative remedy for a violation of protocol on the part of Officer Metz and Wilburn in regards to handling Plaintiff in need of psychiatric help. When Plaintiff asked for help due to severe anxiety and suicidal thoughts he was ignored. On March 5, 2015, Defendant Jackson began beating the Plaintiff, causing Plaintiff to suffer extensive and obvious injuries. On March 6, 2015, the abuse continued and became more violent.  Defendant Jackson warns the Plaintiff that if he told of the abuse that his gang members would kill the Plaintiff.

On March 7, 2015, in the morning around 9:30 while returning from the showers, The Plaintiff walked slowly and once Defendant Jackson was out of earshot Plaintiff informed Officer Fontaine that he needed help to get out of the cell and show the officer his face, saying

"look at my face". Officer Fontaine told Plaintiff to write down what was going on and he would grab it later. Plaintiff did as told, however, Officer Fontaine did not return to the cell to retrieve it.

Later that night, Plaintiff wrote a sick call slip with a message on it that said "need emergency treatment for blunt force trauma from assault" The abuse continued, torment as well as what was mentioned on March 6 and March 5 of 2015. On March 8, 2015, the abuse peaks. Inmate Jackson beats Plaintiff so extensively, the Plaintiff feared for his life.

On March 8, 2015, at 7:40 Plaintiff heard the medical cart coming down the tier. At this time Defendant Jackson was trying to strangle Plaintiff. Fearing that Jackson would kill him, when medical opened the cell slots, Plaintiff ran past Defendant Jackson and put his arms through the slot and reached out to the Officer T. Sines and begged for help screaming "please get me out of here look at me look at me!" By this time Plaintiff's head was swollen. The officer still hesitated for a minute before calling for help. Plaintiff was removed and collapsed on steps of A-tier. Officer Davis was called and assisted lifting Plaintiff to the medical ward where he was pre-screened and deemed E.R. status. He was taken to Western Maryland Regional Health Center.

On March 8, 2015, Plaintiff was charged with fighting, though found not guilty. On March 9 2015, at 3 in the morning Plaintiff returned to WCI and was placed in the infirmary for 4 days. On March 13, 2015, Plaintiff was placed on B-Tier cell number 4 HU 4 and eventually moved to another facility. On March 26, 2015, the Plaintiff filed a Request for Administrative Remedy concerning the Officer's refusal to provide medical care when asked on February 25, 2015.

5

## II. STANDARD OF REVIEW

Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448 (4th Cir. 2011). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); see *Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). A summary judgment motion before any discovery is generally held to be premature. *Greater Baltimore Center for Pregnancy Concerns v. Mayor and City Council of Baltimore*, Nos. 11-1111, 11-1185, 2013 U.S. App. LEXIS 13607, at *34, 2013 WL 33368984 at *9 (4thCir. July 3, 2013) (reversing trial court's grant of summary judgment and denial of non-moving party's request for discovery, stating that "summary judgment is appropriate only after 'adequate time for discovery'") (citations omitted). The Fourth Circuit has also stated, when reversing a trial court's grant of summary judgment before discovery: "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain* Names, 302 F.3d 214, 244-245 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986)).

*In Harrods*, the Fourth Circuit also stated that that RULE 56(d) should be "liberally applied." Id. at 245 n. 18; accord *Greater Baltimore Center for Pregnancy Concerns*, *supra*, Westlaw at *10, Lexis at *35. When complex issues such as "intent" are at issue, discovery is especially warranted. *Harrods*, *supra*, at 247.

Where a defendant controls access to the necessary information, RULE 56(d) motions and affidavits are especially appropriate. Id. Affidavits that accompany RULE 56(d) motions do not require herculean efforts because their purpose is simply to ensure said motions are filed in good faith. Id. at 244. As summarized in <u>Harrods</u>: "When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a RULE 56(d) affidavit if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." Id. (citations omitted).

1. **<u>PLAINTIFF SHOULD BE ALLOWED TO PROCEED WITH NECESSARY DISCOVERY TO MEET HIS BURDEN IN THIS CASE.</u>**

   a) **Exhausting Administrative Remedies**

The Defendants have argued in their Motion that the Plaintiff failed to exhaust administrative remedies. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See also <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008). **Plaintiff should be entitled to discovery on this issue, such as, obtaining copies of the Plaintiff's inmate file, copies of notices, correspondence and memorandums proving evidencing that Plaintiff was aware of the grievance procedures, that he followed said procedures or if he is entitled to waiver**. See <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002); <u>Wyatt v. Terhune</u>, 315 F.3d 1108 (9th Cir. 2003); <u>Foulk v. Charrier</u>, 262 F.3d 687 (8th Cir. 2001) (treating failure to exhaust as affirmative defense but allowing amendment to raise defense); see also <u>Jackson v. District of Columbia</u>, 254 F. 3d 262 (D.C. Cir. 2001); <u>Massey v.</u>

7

*Helman*, 196 F.3d 727 (7th Cir. 1999); *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999); *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998) (exhaustion requirement may be subject to waiver).

      b) **Respondeat Superior**

The Defendants go on to argue that there is no liability under the theory of Respondeat Superior unless the Plaintiff can demonstrate personal participation. *Respondeat superior* is a legal doctrine under which a court may impose vicarious liability to enable a plaintiff to recover damages from the employer or principal of a tortfeasor. *Barclay v. Briscoe v. Ports America Baltimore, Inc*., 427 Md. 270, 282-83, 47 A.3d 560, 567-68 (2012); *Schramm v. Foster*, 341 F. Supp. 2d 536, 543-47 (D. Md. 2004). The elements of a respondeat superior claim are:1) The wrongdoer is employed by, or the agent of, the defendant;2) The employee or agent committed acts or omissions (either negligently or intentionally) causing injuries or damages to others; and3) The employee or agent committed the acts or omissions within the scope of his or her employment or agency, i.e., when he or she was performing services for which he or she had been engaged or when acting in furtherance of the employer's or principal's interests. See RESTATEMENT (SECOND) OF AGENCY §§ 219, 228, 243 (1958); see also Mkt. Tavern, Inc. v. Bowen, 92 Md. App. 622, 610 A.2d 295 (1992); MPJI-Cv 3:2. See generally *Balt. Harbor Charters v. Ayd*, 365 Md. 366, 780 A.2d 303 (2001).

Under the doctrine of respondeat superior, an employer is jointly and severally liable for torts committed by an employee acting within the scope of employment. *Franklin v. Montgomery County*, Civil No. DKC 2005-0489, 2006 U.S. Dist. LEXIS 68476 (D. Md. Sept. 13, 2006); *S. Mgmt. Corp. v. Taha*, 137 Md. App. 697, 769 A.2d 962 (2001), vacated, remanded

8

on other grounds, 367 Md. 564, 790 A.2d 11 (2002); <u>Balt. Police Dep't v. Cherkes</u>, 140 Md. App. 282, 780 A.2d 410 (2001).

Plaintiff requires discovery on this issue so that facts and evidence can be discovered regarding who participated in the beating, what policies and procedures were broken, what supervisory employees were present and evidence of wrongdoing.

### c) **Claims of Moyer**

The Defendants goes on to state that the Plaintiff has set forth no specific facts against the Defendant Moyer. Plaintiff believes and therefore avers that the First Amended Complaint ("FAC"), adequately supports a cause of action against the Defendant Moyer. Under Fed. R. Civ. P. 8(a), a pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain a short and plain statement of the grounds upon which the court's jurisdiction depends, as well as a short and plain statement of the claim showing that the pleader is entitled to relief. Moreover, each "averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1).

If the Court believes that there is any ambiguity in Plaintiff's claims, in the interest of justice, Plaintiff request leave to amend her complaint.

Under Fed. R. Civ. P. 15(a), "[a] party may amend its pleading once as a matter of course" either twenty-one days after serving it or within twenty-one days after service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a). Thereafter, amending a pleading requires "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires," id., and should deny leave to amend only if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," <u>MTB Servs., Inc. v.</u>

*Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 U.S. Dist. LEXIS 61540, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); see *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (stating that the court also may deny leave if the plaintiff has amended more than [**11] once already without curing the deficiencies in the complaint); *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) ("Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend."). Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief" and the plaintiff moves to amend, the Court should grant the motion to give the plaintiff "opportunity to test his claim on the merits." Foman, 371 U.S. at 182.

### d) Pepper Spray

The Defendant is arguing that as a matter of law, the use of pepper spray was appropriate and constitutional. The 4th Circuit Court of Appeals has treated pepper spray, a use of force that causes "closing of the eyes through swelling of the eyelids, . . . immediate respiratory inflammation, . . . and . . . immediate burning sensations," similarly, having held it excessive. In Re: *Park v. Shiflett*, 250 F.3d 843, 848-49, 852 (4th Cir. 2001). In Park,. the 4th Circuit found that in certain instances, the use of pepper spray could be irresponsible and [e]excessive.

Plaintiff requires discovery on whether the use of pepper spray under the facts of Plaintiff's complaint were reasonable or constituted force. Plaintiff also needs discovery to demonstrate what Standard Operation Procedures ("SOPs"), polices and/or procedures may have been violated as a result of the employing pepper spray. See also *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) ( holding that the use of pepper spray or tear gas in correctional facilities is carefully scrutinized because of their inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim).

### e) Use of Force

The Defendant has argued that there is no evidence that there was a use of force. This statement is premature and Plaintiff needs discovery to ascertain the policies and procedures regarding the use of force, what investigation was conduct by the Defendants regarding the use of force in this case, what damages did Plaintiff suffer, if the use of force was reasonable based on the facts provided in the FAC and what determinations were made by the Defendants and its agents.

A claim of excessive force raised by a prison inmate against a correctional officer, such as that alleged in the case sub judice, involves analysis of both objective and subjective elements. See _Stanley v. Hejirika_, 134 F.3d 629, 634 (4th Cir. 1998); _Williams v. Benjamin_, 77 F.3d 756, 760 (4th Cir. 1996). The core judicial inquiry when analyzing the subjective element is to review "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986)). The objective element is analyzed to determine whether the officers= actions were harmful enough to offend contemporary standards of decency. See Hudson, 503 U.S. at 8. Factors which are pertinent to this inquiry include the extent of injuries suffered by the inmate, the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by prison staff, and any efforts on the part of staff to temper the severity of their response. See Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 321. While the inmate's injury need not be significant to violate the Eighth Amendment, something more than a de minimis injury is required in order to prove that excessive force was used.

f) Failure to Protect from Harm

Defendants next argument is that Plaintiff cannot demonstrate as a matter of law, that Defendants agents owed a duty to protect him from harm. Plaintiff's FAC alleges that the Defendants failed to protect Plaintiff from violence at the hands of other prisoners. Plaintiff believes this duty is based on State law Negligence and the 8th Amendment prohibition against cruel and unusual punishment. See *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); U.S. Const. amend. VIII. Plaintiff's FAC demonstrates that the Defendants acted with a deliberate indifference, despite superior knowledge that there was a substantial risk that Plaintiff would be assaulted by fellow inmates.

Plaintiff requires discovery to test the Defendants knowledge of the substantial risk of Plaintiff being assaulted by fellow inmates and what action they took to protect plaintiff from that substantial harm and if they had a culpable state of mind. See *Farmer*, 511 U.S. at 834 (element of Eighth Amendment violation is that defendant prison officials acted with "'deliberate indifference' to inmate health or safety" (citation omitted)).

**g) Harassment**

Plaintiff's claims of harassment are premised under 1983, the 8th Amendment and intentional infliction of emotional distress. Plaintiff argues in his FAC that:

> "Plaintiff claims damages against Officer for mental, emotional and physical injuries sustained after he begged the officer's to help him when he was being threatened and beaten by Mr. Jackson. Instead of helping, the officer's sprayed the Plaintiff with pepper spray, shouted obscenities and degrading language to him and hit and beat him and threatened to put him into the "Buck Naked Room" and refused to allow him to speak to a supervisor. This behavior extended a period of February 24, 2015 until March 8, 2015 when he was beaten so badly by Defendant Jackson that medical care was required".

Plaintiff needs copies of Defendants policies and procedures, SOP's, the reasoning behind placing the Plaintiff in isolation, fully nude, for fourteen (14) days and whether such conduct amounted to harassment, thus rising to the level of a constitutional claim. The Plaintiff alleges that he received very little food, his nakedness made him very cold and he was beaten. ("[T]o ensure faithfulness to the Eighth Amendment's ban only of cruel and unusual punishments, . . . for prison conditions to rise to the level of unconstitutional punishment, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("A two-pronged showing is necessary to demonstrate a prima facie Eighth Amendment violation with respect to prison conditions: (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." (citation omitted)).

### h) Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law. The Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions, entitling him to procedural Due Process protections. See, e.g., *Meachum v. Fano*, 427 U.S. 215 (1976); *Wolff v. McDonnell*, 418 U.S. 539 (1974). Plaintiff needs discovery to demonstrate what policies and procedures were in place to protect him from harm, if Defendants and its agents followed said policies and procedures.

### i) Tort Claim/Punitive Damages

Plaintiff timely sent his tort claim notice to the Defendant. Plaintiff needs discovery to test whether the Defendants acted with malice or gross negligence.

### j) Qualified Immunity

Finally, the Defendants are making a Qualified Immunity argument, despite their being no discovery to test if there agents were grossly negligent and deliberate indifferent to Plaintiff's rights.

The doctrine protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). An official asserting the defense of qualified immunity bears the burden of proof with respect to that defense. <u>Meyers v. Baltimore Cnty., Md.</u>, 713 F.3d 723, 731 (4th Cir. 2013) (citation omitted).

An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. Id. at 834; <u>Brown v. N.C. Dep't of Corr</u>., 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury." <u>Brown</u>, 612 F.3d at 723; see also <u>De'lonta v. Johnson</u>, 708 F.3d 520, 525 (4th Cir. 2013). The second element, requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834.

Plaintiff requires discovery to demonstrate which statutory or constitutional rights were violated and to test the Defendants state of mind regarding the offenses complained. A plaintiff establishes "deliberate indifference" by showing that the prison official "kn[ew] of and

disregard[ed] an excessive risk to inmate health or safety." Id. at 837. Importantly, deliberate indifference is "a very high standard," Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999), which requires that a plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety.

### III.  CONCLUSION

For the reasons stated above, Defendants summary judgment motion must be denied and Plaintiff's Rule 56(d) Motion should be granted. Plaintiff is entitled to discovery to prove his well-pled claims.

Respectfully Submitted,

/s/ Jessie Lyons Crawford
_____
Jessie Lyons Crawford, Esq
Bar No.: 25247
Counsel for Plaintiff
The Law Offices of Jessie Lyons Crawford, LLC
2601 Maryland Avenue
Baltimore, Maryland 21218
410-662-1230